UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENE A. LEFEBVRE,

                              Plaintiff,

          v.

JONATHAN P. MORGAN, et al.,

                              Defendants.

No. 14-CV-5322 (KMK)

OPINION & ORDER

Appearances:

Gene A. Lefebvre
Wappinger Falls, NY
*Pro Se Plaintiff*

Felicia Gross, Esq.
Office of the Attorney General of the State of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Gene A. Lefebvre ("Plaintiff") filed the instant Second Amended

Complaint ("SAC") against Jonathan P. Morgan, Robert E. Levin, Robert K. Palmer, James

Barron, Karim Adeen-Hasan, and Daniel J. Cunningham (collectively, "Defendants"), bringing

claims under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights to due process,

privacy, and free speech.  Before the Court is Defendants' Motion To Dismiss Plaintiff's Second

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (Dkt.

No. 36.)  For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's SAC and are taken as true for the purpose of resolving the instant Motion.  The SAC is largely identical to the Amended Complaint except as identified below.  Therefore, what follows is an abbreviated account of the facts giving rise to this Action.[1]

#### 1.  The Parties

Plaintiff has worked for the New York State Office of General Services ("OGS") as an assistant building construction engineer from November 4, 1993 to the present.  (Second Am. Compl. ("SAC") ¶ 2 (Dkt. No. 25).)  Plaintiff's role covered two types of state construction work: (1) "Capital Projects," which involve work "designed and bid by OGS in Albany," and then "handed down to the site of construction . . . where Plaintiff was, and is, employed," (*id.* ¶ 9), and (2) "Emergency Projects," such as "flooding, fire, a broken water main, or a short circuit in an electrical transformer," (*id.*).  With respect to the latter work, "Plaintiff would receive a call from Albany, or from a local supervisor, and . . . travel to the problem location." (*Id.* ¶ 10.)  He would then "determine the scope of the repair, formulate a contractor response, and solicit contractors to bid.  Once a low bidder was determined, Plaintiff would direct the contractor to do the work until the emergency condition no longer existed."  (*Id.*)

Defendants are various supervisors, directors, and officers at OGS.  Specifically, Defendant Jonathan P. Morgan ("Morgan") is, and at all relevant times was, "Area Supervisor"; Defendant Robert E. Levin ("Levin") is, and at all relevant times was, "Regional Supervisor";

---

[1] For a full recitation of the facts, see the Court's prior Opinion & Order issued in March 2016.  (*See* Opinion & Order ("Opinion") (Mar. 31, 2016) (Dkt. No. 24).)

Defendant Robert K. Palmer ("Palmer") is, and at all relevant times was, "Director of the Division of Construction"; Defendant James Barron ("Barron") is, and at all relevant times was, "Director of Labor Relations"; Defendant Karim Adeen-Hasan ("Adeen-Hasan") is, and at all relevant times was, "Chief Diversity Officer"; and Defendant Daniel J. Cunningham ("Cunningham") is, and at all relevant times was, "Director of Human Resources Management." (*Id.* ¶¶ 3–8.)

### 2.  Plaintiff's Employment at OGS

The SAC describes Plaintiff's participation in two specific projects for OGS: repairs to the "State Emergency Management Office Building/Bunker" in the aftermath of hurricane Irene, (*id.* ¶¶ 11–16), and roof removal and installation at "DOT Region 8 Maintenance Headquarters," (*id.* ¶¶ 17–19).  The SAC's descriptions of these projects are identical to those in the Amended Complaint, with the exception of Plaintiff's additional allegation that he "had two responsibilities; one, to accurately describe the contract specifications and emergency requirements, and two, to spearhead discussions to prevent potential pitfalls that the Plaintiff has no direct control over."  (*Id.* ¶ 20.)  Plaintiff asserts that as to the second responsibility, he "spoke as a matter of [p]ublic concern" and made requests that were "not . . . a job duty of a construction inspector."  (*Id.*)

In relation to Plaintiff's "[d]aily [w]ork," the SAC asserts instances of threats and harassment by Defendants, particularly between December 27, 2010 and March 25, 2011 and again between October 6, 2011 and December 7, 2011.  (*See generally id.* ¶¶ 21–77.)  For example:

- Morgan frequently "made . . . false accusations that Plaintiff had been AWOL," including on December 27, 2010 and throughout the month of January 2011.  (*Id.* ¶¶ 21–22.)

- Morgan "verbally assault[ed] Plaintiff throughout the month of January 2011," including on or about January 27, 2011, when Morgan "verbally terrorize[d] Plaintiff," threatened Plaintiff with being AWOL for seeking medical attention without asking for use of leave, and said to him, "You don't have long now," and "I am going to break you," which led Plaintiff to leave the office due to cardiac difficulties. (*Id.* ¶¶ 23–26, 28.)

- Morgan continued to "verbally terrorize" Plaintiff in early February 2011, and Plaintiff again had to leave the office due to cardiac difficulties, spending the night of February 2, 2011 in the emergency room. (*Id.* ¶ 29.)

- On February 8, 2011, Morgan, with Levin's authority, falsely accused Plaintiff of "unspecified tardiness and unspecified absence without authorization." (*Id.* ¶ 30.)

- On February 9, 2011, Morgan "requested that Albany Human Resources revoke Plaintiff's submission of his previous year's timesheets." (*Id.* ¶ 33.) He made the same request the following week, which amounted to "falsely accus[ing] Plaintiff of misappropriating state time—a serious charge." (*Id.* ¶ 38.)

- Also on February 9, 2011, Morgan falsely accused Plaintiff of forging Sloan Kettering forms that confirmed Plaintiff donated blood on certain days. (*Id.* ¶ 34.)

- On February 15, 2011, Levin "requested that Albany Human Resources revoke Plaintiff's submission of six month and eleven month old timesheets." (*Id.* ¶ 36.)

- On February 16, 2011, Morgan threatened to deny Plaintiff's request for time off to go to the doctor, (*id.* ¶ 37), and on February 22 and February 25, 2011, he denied such requests, (*id.* ¶¶ 42, 46).

- On February 17, 2011, Plaintiff requested Palmer "intercede and investigate the unhealthy and potentially life-threatening abuse" that Morgan and Levin "were continually inflicting on Plaintiff." (*Id.* ¶ 41.)

- On February 23, 2011, Levin backdated Plaintiff's most recent Performance Evaluation, to allow Morgan to give Plaintiff a six-month review in May 2011. (*Id.* ¶ 44.)

- On February 25, 2011, Morgan falsely accused Plaintiff of improper work procedures, verbally abused and yelled at Plaintiff, falsely accused him of being AWOL, and wrote him up for being AWOL. (*Id.* ¶¶ 45, 47.)

- On or about March 3, 2011, Morgan "revoked Plaintiff's sworn . . . Leave and Accrual Tracking System . . . document." (*Id.* ¶ 48.)

- On or about October 6, 2011, Morgan falsely accused Plaintiff of being AWOL the previous day, and supported the accusation by wrongfully adjusting times and dates. Plaintiff disputed these times and dates with Morgan but "to no avail." (*Id.* ¶¶ 67–68.)

4

- On or about October 18, 2011, Morgan attempted to provoke Plaintiff by stating to him upon entering the office, "Thanks for leaving so you don't hurt me." Plaintiff sent an email to Palmer and Adeen-Hasan notifying them of the incident. (*Id.* ¶¶ 69–70.)

- Plaintiff claims that on or about December 5, 2011, Morgan falsely accused Plaintiff of being AWOL on October 6 and October 12, 2011. (*Id.* ¶¶ 72–73.) Levin "wrongfully backed . . . Morgan's false accusations." (*Id.* ¶ 74.)

The SAC specifically alleges that Defendants "wrongfully demanded" that Plaintiff disclose certain medical information and that such information "require[d] Plaintiff to publicly air medical issues with superiors" and other employees. (*Id.* ¶¶ 31, 50.) Plaintiff contends that these demands—which spanned from February to March 2011—"violated [Plaintiff's] right to privacy" and were made "solely for the purpose of mining . . . for [P]laintiff's medical information." (*Id.* ¶¶ 31–32.) Plaintiff asserts that "Defendant Levin had his secretary scan and e-mail Plaintiff's doctor's information, contrary to HIPPA, and Plaintiff's constitutional right to privacy, as well as practices of common decency," (*id.* ¶ 52), and that "[u]pon information and belief, Defendant Levin sent Plaintiff's personal medical information to other supervisors in [OGS]," (*id.*). Plaintiff sought "relief from exposing [his] sensitive medical information, including highly personal information relating to [his] ongoing . . . medical and psychological conditions," from Defendant Barron, but Plaintiff was ultimately told he was being uncooperative. (*Id.* ¶¶ 61, 63.)[2]

The SAC also contains references to various internal grievances and complaints filed by Plaintiff, including:

---

[2] In its prior Opinion, the Court noted ambiguity in the Amended Complaint as to what medical information was actually disclosed by Plaintiff as a result of the Defendants' demands. (*See* Opinion 32 n.21.) The Amended Complaint states that Plaintiff "*would be* sending ADM 48s to Human Resources." (Am. Compl. ¶ 61 (Dkt. No. 10) (emphasis added).) In the SAC, Plaintiff clarifies that he "sent every required ADM 48 to Human Resources." (SAC ¶ 63).

- Workers' Compensation Claim:  Plaintiff filed the claim in February 2011 "to document the physical toll Defendants' actions were taking on him."  (*Id.* ¶ 35.)  Based on Plaintiff's supporting documentation, the claim was settled, and the State Insurance Fund agreed to pay Plaintiff a net payment of $2,215, as well as the costs of the medical bills for 20 visits by Plaintiff to his psychiatrist.  (*See id.* Ex. G.)

- Request for Reasonable Accommodation:  Plaintiff filed this request to Cunningham on or about February 23, 2011, and the request "provided in great detail the abuse by . . . Morgan."  (*Id.* ¶ 43.)  In an email attached as an exhibit, Plaintiff explained to Cunningham at the time that he had "a series of upcoming [d]octor appointments, all due . . . to the stressful work environment."  (*See id.* Ex. I.)

- Taylor Law Request:  On or about March 24, 2011, Plaintiff filed a request under the Taylor Law, "which allows union[s] to make certain demands of management, in order to learn the nature of . . . Morgan's complaints against Plaintiff," but Levin ignored the request.  (*Id.* ¶ 65.)

- Workplace Violence Complaint:  Plaintiff filed this complaint "after OGS finally made the [workplace violence] policy available" in January 2012.  (*Id.* ¶ 75.)  The complaint itself is dated March 6, 2013, and states that Morgan "created a [h]ostile and [a]busive work [e]nvironment on a daily basis," which resulted in medical issues for Plaintiff.  (*See id.* Ex. K.)  On January 6, 2014, Plaintiff received a letter from the Assistant Director of Personnel for the Division of Human Resources Management for OGS, which stated that Plaintiff's "claim of workplace violence had been substantiated."  (*Id.* ¶ 84; *see also id.* Ex. L.)

- Hostile Work Environment Claim:  Plaintiff alleges that Adeen-Hasan "stonewalled the Hostile Work Environment investigation."  (*Id.* ¶ 77(B).)  According to Plaintiff's Workplace Violence Complaint, "[u]pper management was informed" of the hostile work environment but an "[i]nvestigation was conducted for Sexual/Racial/Religious Harrassment [sic], which was never alleged."  (*Id.* Ex. K.)

Plaintiff alleges that he faced retaliation from Defendants Morgan, Levin, Palmer, Cunningham, and Adeem-Hasan for filing the following claims:  "harassment; Taylor Law Request; Workplace Violence Complaint; and Request for Reasonable Accommodation."  (*Id.* ¶ 76.)

On September 23, 2012, a Notice of Discipline was filed against Plaintiff asserting that he was AWOL on certain days and that he engaged in improper internet use.  (*Id.* ¶ 78.)  Plaintiff "fought the Notice of Discipline through his Union Representative," through an arbitration

process, (*id.* ¶ 79), but was eventually "docked [six] days pay by OGS for the charges levied in the Notice of Discipline, which . . . was purely and transparently retaliatory," (*id.* ¶ 82).

Plaintiff alleges that through their actions, Defendants violated Plaintiff's rights to due process, privacy, and free speech.  (*Id.* ¶¶ 92–93, 97, 100.)  As a result, Plaintiff seeks injunctive relief, compensatory and punitive damages, and costs and fees of the Action.

B.  Procedural History

Plaintiff filed his initial Complaint on July 15, 2014, (Dkt. No. 1), and on December 2, 2014, filed his Amended Complaint, (Dkt. No. 10).  On March 9, 2015, Defendants filed a motion to dismiss the Amended Complaint and accompanying memorandum of law, (Dkt. Nos. 20–21), Plaintiff filed his opposition on April 24, 2015, (Dkt. No. 22), and Defendants filed their reply brief in further support of the motion to dismiss on May 22, 2015, (Dkt. No. 23).  On March 31, 2016, the Court issued an Opinion & Order ("Opinion"), granting Defendants' motion to dismiss.  (Dkt. No. 24.)  In its Opinion, the Court granted Plaintiff leave to file a SAC within 30 days.  (*Id.* at 38.)

On April 29, 2016, Plaintiff filed his SAC.  (Dkt. No. 25.)  On August 1, 2016, Defendants filed the instant Motion and accompanying memorandum of law, (Dkt. Nos. 36–37), and on October 3, 2016, Plaintiff filed his opposition to Defendants' Motion, (Dkt. No. 40). Defendants filed their reply on October 24, 2016.  (Dkt. No. 43.)

II.  Discussion

A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks and alteration omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted));

*Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (internal quotation marks and alteration omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alterations and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Lastly, because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest."  *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (same).  This admonition "applies with particular force when a plaintiff's civil rights are at issue."  *Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*,

357 F.3d 197, 200 (2d Cir. 2004) (same).  However, the liberal treatment afforded to pro se

litigants does not excuse a pro se party "from compliance with relevant rules of procedural and

substantive law."  *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

    B.  Analysis

       1.  First Amendment Retaliation Claim

In its prior Opinion, the Court dismissed the Amended Complaint's First Amendment

retaliation claim because Plaintiff's comments "amounted to speech as an employee, not a

citizen" and therefore, "Plaintiff ha[d] not pleaded that he engaged in any speech protected by

the First Amendment."  (Opinion 22 (internal quotation marks omitted).)  In his SAC, Plaintiff

reasserts his prior allegations regarding his right to free speech without variation, but adds the

following:

> Plaintiff spoke as a matter of [p]ublic concern when addressing [c]ontractors on *[s]afety and [h]azards that affect all people that have access to the areas and surrounding areas* of the construction site.  As a representative of a [h]ost [e]mployer, the primary employers' actions can cause health and safety issues for themselves, clients affected by the work, *and the public that has to visit the [s]tate [o]ffice locations*.  Plaintiff had two responsibilities; one, to accurately describe the contract specifications and emergency requirements, and two, to spearhead discussions to prevent potential pitfalls that the Plaintiff has no direct control over.  As an example, requesting citizens to use a pedestrian over[]pass versus walking within extended areas of hazard would not be a job duty of a construction inspector.

(SAC ¶ 20 (emphases added).)  The amended pleading attempts to frame Plaintiff's speech as an

instance of protected speech made on a matter of public concern in Plaintiff's capacity as a

private citizen, and thus, protected by the First Amendment.  Defendants aver that Plaintiff's new

allegations are similarly inadequate as "the context of Plaintiff's speech was that of a public

employee during the course of doing his job" and that "Plaintiff's allegations concern only his

own employment at OGS and his personal interest, rather than . . . matters of public concern."

(*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss Pl.'s SAC ("Defs.' Mem.") 14 (Dkt. No.

37).)[3]

It is "established law in this Circuit that . . . a plaintiff alleging retaliation [must] establish

[he engaged in] speech protected by the First Amendment." *Sousa v. Roque*, 578 F.3d 164, 169–

70 (2d Cir. 2009) (internal quotation marks omitted). "The First Amendment protects a public

employee's right, in certain circumstances, to speak as a citizen addressing matters of public

concern." *Golodner v. Berliner*, 770 F.3d 196, 202 (2d Cir. 2014) (internal quotation marks

omitted). "If the court determines that the plaintiff either did not speak as a citizen or did not

speak on a matter of public concern, 'the employee has no First Amendment cause of action

based on his or her employer's reaction to the speech.'" *Sousa*, 578 F.3d at 170 (quoting

*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

To constitute speech on a matter of public concern, an employee's expression must "be

fairly considered as relating to any matter of political, social, or other concern to the

community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). A topic is a matter of public concern

for First Amendment purposes if it is "of general interest," or "of legitimate news interest," or

"of value and concern to the public at the time" of the speech. *City of San Diego v. Roe*, 543

U.S. 77, 83–84 (2004) (per curiam). The Second Circuit has recognized that "safety in the

workplace is a matter of public concern." *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212

(2d Cir. 2002). However, "the mere fact that one or two of [a public employee's] comments

---

[3] The Court's March 2016 Opinion addressed Plaintiff's retaliation claims regarding his filing of "numerous grievance reports." (*See* Opinion 14–17.) Plaintiff's SAC does not assert new facts or allegations regarding these grievances. Because these filings, "at [their] heart, [are] limited to" "personal grievance[s] related to the conditions of [Plaintiff's] employment," the Court reiterates that these filings "do[] not implicate the First Amendment" and cannot form the basis of a First Amendment retaliation claim. *Golodner v. Berliner*, 770 F.3d 196, 204 (2d Cir. 2014).

could be construed broadly to implicate matters of public concern does not alter the general nature of [the] statements." *Ezekwo v. N.Y.C. Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991). Here, while Plaintiff's instructions "on [s]afety and [h]azards" at the OGS worksite might have *impacted* the public, (SAC ¶ 20), Plaintiff "was not on a mission to protect the public welfare," *Ezekwo*, 940 F.2d at 781. Rather, Plaintiff's primary goal was to effectively carry out his responsibility to "direct the contractor to do the work" for which it was hired. (SAC ¶ 10.)

However, even assuming that Plaintiff's speech addressed a matter of public concern, his claim fails as it is clear Plaintiff's comments on "[s]afety and [h]azards" was speech by an employee, rather than a citizen. (*Id.* ¶ 20.) "[S]peech made 'pursuant to' a public employee's job duties," is "'speech that owes its existence to a public employee's professional responsibilities,'" and is not protected by the First Amendment. *Weintraub v. Bd. of Educ. of City Sch. Dist.*, 593 F.3d 196, 201 (2d Cir. 2010) (quoting *Garcetti*, 547 U.S. at 421). Plaintiff newly alleges that one of his two responsibilities was "to spearhead discussions to prevent potential pitfalls that the Plaintiff has no direct control over." (SAC ¶ 20.) As an example, Plaintiff offers that "requesting citizens to use a pedestrian over[]pass versus walking within extended areas of hazard would not be a job duty of a construction inspector." (*Id.*)[4]

---

[4] Plaintiff asserts that he "told Defendant Morgan that Plaintiff wanted to issue violations to the [c]ontractor for improper use of a ladder and lack of use of hard hats with overhead hazards"—tasks directly related to his ordinary job responsibilities. (SAC ¶ 18.) It was these disagreements between Plaintiff and Defendants as to how the projects should be completed and Plaintiff's interactions with on-site contractors that allegedly resulted in Plaintiff's "denigrat[ion] . . . to the Facility Manager" and "remov[al] from th[e] project." (*Id.*) Plaintiff's SAC does not allege that Plaintiff suffered retaliation as a result of making a request that "citizens . . . use a pedestrian over[]pass." (*Id.* ¶ 20.) Indeed, it is not clear from Plaintiff's SAC that he actually "request[ed] citizens to use a pedestrian over[]pass" or if he simply offers it as a hypothetical request that would be outside the scope of his responsibilities. (*Id.*) Moreover, it does not appear from the SAC that Defendants were aware of Plaintiff's request regarding citizens' welfare, let alone that such speech forms the basis of Plaintiff's First Amendment retaliation claim.

Importantly, "speech can be pursuant to a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub*, 593 F.3d at 203 (internal quotation marks omitted). If the speech was a "means to fulfill, and undertaken in the course of performing, [a plaintiff's] primary employment responsibility," the plaintiff speaks as an employee and not a citizen. *Id.* (citations and internal quotation marks omitted); *see also Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 207 (E.D.N.Y. 2013) (same).

Plaintiff's denial of "direct control over" "potential pitfalls" and his contention that it was "not . . . a job duty of a construction inspector" to comment on pedestrian safety in worksites, (SAC ¶ 20), does not change the fact that Plaintiff's speech was "pursuant to [his] official job duties" as an assistant building construction engineer, *Weintraub*, 593 F.3d at 203 (internal quotation marks omitted). It is without question that Plaintiff made such speech "in the course of performing . . . his primary employment responsibility." *Id.* (internal quotation marks omitted). For example, Plaintiff's direction to "the contractor to remove his air changing and dehumidification equipment" or his subsequent request to "get his . . . equipment back on site" undoubtedly related to Plaintiff's job responsibilities, (SAC ¶ 15), as did any comments Plaintiff made to the contractor regarding "improper use of a ladder and lack of use of hard hats with overhead hazards," (*id.* ¶ 18). Indeed, it is clear that *all* the comments that Plaintiff made to contractors and facility representatives were related to Plaintiff's job duties, as is clear from the SAC's description of his responsibility to "direct the contractor to do the work until the emergency condition no longer existed." (*Id.* ¶ 10.) Plaintiff's bare allegation that he "spoke as a matter of [p]ublic concern" is a legal conclusion which the Court need not presume true. *See Iqbal*, 556 U.S. at 681 (noting that "the conclusory nature of [the plaintiff's] allegations . . .

disentitles them to the presumption of truth"). Thus, Plaintiff's First Amendment claim remains rooted in his responsibility to supervise and direct the contractor that was hired to complete the project. Accordingly, Plaintiff's new claims this speech touched on matters of public concern have failed to cure the deficiencies identified in his Amended Complaint. (*See generally* Opinion 15–22.) Such speech on the "health and safety issues" facing the public, (SAC ¶ 20), amounted to speech as an employee, not a citizen, and thus cannot serve as the basis of a First Amendment retaliation claim. *See Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011) ("If the employee did not speak as a citizen, the speech is not protected by the First Amendment . . . ."). Therefore, Plaintiff's First Amendment retaliation claim is dismissed.

### 2. Procedural Due Process Claim

"To plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (alteration, emphasis, and internal quotation marks omitted); *see also Chrebet v. County of Nassau*, 24 F. Supp. 3d 236, 244 (E.D.N.Y. 2014) (same), *aff'd*, 606 F. App'x 15 (2d Cir. 2015). Plaintiff asserts that "[p]rocedural due [p]rocess was denied" as a result of: (1) Defendants "alleging specific allegations during the [i]nterrogation process . . . and then changing the focus of the Notice [o]f Discipline from the areas of [i]nterrogation"; (2) the 11-month delay in serving the Notice of Discipline; and (3) the discrepancy in the "dates of the accused AWOL" during the interrogation versus the Notice of Discipline. (SAC ¶¶ 80–81.) Defendants assert that regardless of whether Plaintiff has adequately pleaded that he possessed a property interest in his continued employment, "[Plaintiff's] claim still fails because he has not sufficiently alleged that he was denied due process." (Defs.' Mem. 10.)

a.  Property Right

In its prior Opinion, the Court noted that "Plaintiff's Amended Complaint [wa]s devoid of any reference to a state law, contract, or collective bargaining agreement that prohibits his discharge, or the imposition of other discipline, without cause, which would create a property right in his continued employment and may entitle him to due process protections before a suspension without pay."  (Opinion 24.)  Thus, the Court found that Plaintiff had failed to "sufficiently allege[] the basis of his property interest in his employment."  (*Id.* at 26.)  Plaintiff was granted an opportunity to "file a Second Amended Complaint that more clearly alleges the source of his property right."  (*Id.* at 30; *see also id.* at 27 n.17 ("If Plaintiff chooses to file a Second Amended Complaint, he should include allegations that address the source of his alleged property interest in his employment—be it New York's Civil Service Law, a collective bargaining agreement, or something else.").)  Plaintiff has now adequately alleged the source of his property right.

New York Civil Service Law § 75 "gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing."  *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994).  In his SAC, Plaintiff alleges that he "is an 'open competitive employee' under [§] 75 of the [New York Civil Service Law], and as such, . . . is a 'covered person' for purposes of his allegations that Defendants violated his constitutional right to due process."  (SAC ¶ 2.)  As an exhibit to his SAC, Plaintiff has submitted an "Employee Information" screenshot, revealing his title as an assistant building construction engineer with OGS for 40 hours per week.  (*See id.* Ex. O.)  Plaintiff further asserts that he "has a constitutionally protected property right in continued employment" pursuant to "represent[ation] by the Public Employees Federation, AFL-CIO in contract agreement with The State of New

York Professional, Scientific and Technical Services Unit." (*Id.* ¶ 2.) Thus, Plaintiff has adequately pleaded the existence of a property interest in his continued employment. The Court therefore turns to the alleged deprivation of that property without due process.

### b.  Deprivation of Property Without Due Process

Defendants argue that as with Plaintiff's Amended Complaint, "Plaintiff's SAC is devoid of facts adequately alleging how he was denied due process, what process he was due, and who denied him his process." (Defs.' Mem. 10; *see also* Reply Mem. of Law in Further Supp. of Defs.' Mot. To Dismiss 4–5 (Dkt. No. 43).) The Court agrees that, even as amended, Plaintiff's pleading does not state a claim for a procedural due process violation because it does not sufficiently allege that Plaintiff was denied due process.

"[W]hether the government deprived the plaintiff of [an] interest without due process" is an inquiry that "asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." *Narumanchi v. Bd. of Trs. of Ct. St. Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The Second Circuit has held that "[a]n employee who has a property interest in his employment"—such as Plaintiff—"'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' before he is subjected to the loss of employment." *Munafo*, 285 F.3d at 212 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

Plaintiff's sole new contention in the SAC regarding his due process claim is that he "was deprived of due process by Defendants 'alleging specific allegations during the [i]nterrogation process, which is a fact finding exercise for [d]iscipline, and then changing the focus of the Notice [o]f Discipline from the areas of [i]nterrogation.'" (Pl.'s Mem. of Law in Opp'n to Defs.'

16

Second Mot. To Dismiss ("Pl.'s Opp'n") 20 (Dkt. No. 40) (quoting (SAC ¶ 80)).[5]  Plaintiff

further alleges that the Notice of Discipline was faulty due to discrepancies between the dates

contained within it and those raised during Plaintiff's earlier "interrogation" in October 2011.

(*See* SAC ¶¶ 77(c), 78.)  However, as previously noted, these allegations do not identify "the

process alleged due or how that process was denied," *Hoy v. Incorporated Village of Bayville*,

765 F. Supp. 2d 158, 175 (E.D.N.Y. 2011), but rather take issue with the delayed notice of the

charges Plaintiff was facing, (*see* Opinion 28).  The fact that the Notice of Discipline involved

different conduct than that covered during the "interrogation" is irrelevant; it is the Notice itself

which defines the scope of Plaintiff's liability and apprised Plaintiff of the charges he faced.

Here, Plaintiff was afforded a hearing before an arbitrator "to resolve the Notice of Discipline

issued against [Plaintiff]," (*see* SAC Ex. N), and Plaintiff does not allege that the hearing itself

was flawed, (*see* Opinion 30 n.20.)[6]  Furthermore, Plaintiff could have challenged the result of

that hearing but chose not to do so.  As such, Plaintiff received the protections due process

guarantees: "written notice of the charges against him, an explanation of the employer's

evidence, and an opportunity to present his side of the story."  *Loudermill*, 470 U.S. at 546.

Accordingly, as Plaintiff has not "show[n] that the deprivation [of his property interest in his job]

---

[5] Paragraph 81 of the SAC is an addition to Plaintiff's Amended Complaint and alleges that "the dates of the accused AWOL during the [i]nterrogation were not the dates of the Notice of Discipline."  (SAC ¶ 81.)  While the paragraph itself is new, the contention is indistinguishable from that alleged in the Amended Complaint and elsewhere in the SAC.  (*See* Am. Compl. ¶ 76; SAC ¶ 78 ("A Notice of Discipline, dated September 23, 2012, was filed against Plaintiff alleging that he was AWOL on different days than those about which he was earlier interrogated.").)

[6] In its previous Opinion, the Court noted that Plaintiff's allegation that he "could not defend himself against the internet usage portion of the notice because the OGS website had purportedly changed," (Am. Comp. ¶ 76; SAC ¶ 78), did "not explain how this somehow prevented him from presenting his side of the story prior to the imposition of his suspension," (Opinion 28 (internal quotation marks, citation, and alteration omitted)).  Plaintiff's SAC fails to respond to this deficiency and therefore, the Court declines to reconsider it as a basis for Plaintiff's due process claim.

was effected without due process," *J.S.*, 714 F.3d at 105, his due process claim is dismissed.

### 3. Privacy Claim

Plaintiff alleges that "[b]y revealing sensitive facts relating to Plaintiff's emotional and physical health[,] Defendants violated [his] right to privacy under the Constitution."  (SAC ¶ 97.) In its prior Opinion, the Court held that Plaintiff's privacy claim was barred by the statute of limitations and that Plaintiff failed to establish that equitable tolling could make his claim timely. (*See* Opinion 30–35.)  Plaintiff now pleads that the application of equitable tolling is warranted due to his "diligent[] pursui[t] [of] his . . . right to privacy," (SAC ¶ 87), "the imposed chain of command required of Plaintiff by Defendants," (*id.* ¶ 88), and the impediment of "[three] months of training and commuting" "in excess of 50 miles one way," (*id.* ¶ 89.  The Court once again finds that Plaintiff's privacy claim is time-barred, and that equitable tolling does not apply.

### a. Equitable Tolling

While "the defendant[] bear[s] the burden of establishing the expiration of the statute of limitations as an affirmative defense," *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) (internal quotation marks omitted), a defendant can raise such a defense "in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint," *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

When a plaintiff brings an action under § 1983, "courts apply the statute of limitations for personal injury actions under state law."  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("In [§] 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" (second and third alterations in original) (some alterations and internal quotation marks omitted).  The statute of limitations for personal injury actions in New York is three years,

18

see *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *see also* N.Y. C.P.L.R. §

214(5), therefore, "[§] 1983 actions filed in New York are . . . subject to a three-year statute of

limitations," *Hogan*, 738 F.3d at 517.  Further, federal law determines when a § 1983 cause of

action accrues, and the Second Circuit has ruled that "accrual occurs when the plaintiff knows or

has reason to know of the injury which is the basis of his action."  *Pearl*, 296 F.3d at 80 (internal

quotation marks omitted).

By Plaintiff's own accord, "his privacy right violation . . . took place . . . in March 2011."

(Pl.'s Opp'n 10.)[7]  Plaintiff thus had three years from the date of the violation to file this claim.

*See also Thompson v. City of Mount Vernon*, No. 93-CV-4788, 1994 WL 561253, at *3

(S.D.N.Y. Oct. 12, 1994) (applying a three-year statute of limitations to the plaintiff's § 1983

privacy claim).  Plaintiff filed his initial Complaint on July 15, 2014, more than three years after

his privacy claim accrued.  Thus, Plaintiff's privacy claim is time-barred unless there is a basis

for tolling of the statute of limitations.

Equitable tolling of the statute of limitations is applied "only in 'rare and exceptional

circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely

performing a required act, and . . . the party 'acted with reasonable diligence throughout the

period he [sought] to toll.'"  *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (third

alteration in original) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)); *see also*

*Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013) ("[C]ourts

in this Circuit deciding [§] 1983 claims have applied the federal equitable tolling standard, which

allows tolling where extraordinary circumstances prevented a party from timely performing a

---

[7] The SAC alleges violations of Plaintiff's right to privacy throughout February and
March 2011.  (*See, e.g.*, SAC ¶¶ 31–32, 50, 52, 60–61.)  At the very latest, the statute of
limitations began running on March 24, 2011, when Plaintiff knew of the injury which is the
basis of his claim and, accordingly, sent Defendants the Taylor Law request.

required act." (internal quotation marks omitted)).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks omitted); *see also Feliciano v. U.S. Bank Nat'l Ass'n*, No. 13-CV-5555, 2014 WL 2945798, at *6 (S.D.N.Y. June 27, 2014) (same).  The Second Circuit has explained that the type of situation warranting equitable tolling is one "where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action."  *Pearl*, 296 F.3d at 85 (internal quotation marks omitted).

Plaintiff avers that he "is entitled to equitable tolling on all [of] his claims, particularly his breach of privacy claim," (SAC ¶ 86), because "Defendants placed serious and extraordinary circumstances in Plaintiff's way . . . [that] effectively concealed his privacy claim."  (Pl.'s Opp'n 11.)  Specifically, Plaintiff alleges that he was "diligently pursuing . . . his right to privacy, but Defendants never responded to Plaintiff's Taylor Law [r]equest."  (SAC ¶ 87.)  Additionally, Plaintiff contends that he is entitled to equitable tolling "due to the imposed chain of command required of Plaintiff by Defendants," (*id.* ¶ 88), and the fact that following his removal as engineer-in-charge, Plaintiff was "required to commute daily in excess of 50 miles one way to be trained" as an estimator, (*id.* ¶ 89).  Plaintiff asserts that he "was mentally worn out with the [three] months of training and commuting" and "has shown the extraordinary effort required to overcome the extraordinary impediments placed in his way."  (*Id.*)  The Court addresses each alleged basis for equitable tolling in turn.

### i.  Lack of Response to Plaintiff's Taylor Law Request

Plaintiff avers that he "sent a Taylor Law [r]equest to Defendant Levin dated March 24,

20

2011[,] requesting information relating to . . . his privacy right violation."  (Pl.'s Opp'n 10.)[8]
While the Court notes that Plaintiff's Taylor Law request sought "the intimate details of his
private life revealed by Defendant Levin" and that such details formed the "basis for Plaintiff's
privacy claim," (*id.* at 14), Defendants' inaction on the request did not "conceal[] from . . .
[P]laintiff the existence of the cause of action" regarding his right to privacy, *Veltri v. Building
Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004).  Plaintiff admits that "the Taylor
Law request was made . . . *after* the wrongful privacy violation," (Pl.'s Opp'n 14 (emphasis in
original)), and indeed, the Taylor Law request was made to uncover "facts underlying
Defendant[s'] violation of Plaintiff's constitutional rights," (*id.*).  Any suggestion that Plaintiff
"had no idea he had such a cause of action" is belied by the very filing of his Taylor Law
request.  (*Id.* at 11.)  Moreover, Defendants' inaction did not bar Plaintiff from bringing a federal
lawsuit, as evidenced by the fact that Plaintiff filed the instant Action without getting a response
to his Taylor Law request.  Thus, Defendants' failure to answer Plaintiff's Taylor Law request is
an insufficient basis for tolling the statute of limitations.

### ii.  Imposed Chain of Command

Plaintiff contends that he is "entitled to a tolling of the statute of limitations due to the
imposed chain of command required of Plaintiff by Defendants."  (SAC ¶ 88.)  Plaintiff asserts
that he "filed the requisite claims within the New York State Office of General Services Agency,
moving on to New York Dep[artmen]t[] [o]f Labor, and only after getting no satisfaction from

---

[8] New York's Public Employees' Fair Employment Act, commonly known as the
Taylor Law, exists "to promote harmonious and cooperative relationships between government
and its employees and to protect the public by assuring, at all times, the orderly and
uninterrupted operations and functions of government."  N.Y. Civ. Serv. Law § 200.  Sections
209-a(1), together with §§ 202 and 203, provide the "right of an employee organization to obtain
information relevant to a potential contractual grievance about the interpretation, application[,]
or alleged violation of a provision of a collective bargaining agreement."  *Pfau v. Public Empl.
Relations Bd.*, 892 N.Y.S.2d 667, 669 (App. Div. 2010).

New York State avenues[,] . . . [filed] a [f]ederal 42 U.S.C. § 1983 claim." (*Id.*)

As noted in the Court's prior Opinion, (*see* Opinion 34), other than those brought pursuant to the Prison Litigation Reform Act ("PLRA"), § 1983 claims generally do not require exhaustion of administrative or state remedies before a plaintiff can file an action, *see Coleman v. Dumeng*, No. 10-CV-8766, 2012 WL 467133, at *3 (S.D.N.Y. Feb. 14, 2012) ("Unlike claims that fall within the PLRA, there is no general requirement that a plaintiff exhaust administrative remedies before filing an action under § 1983."); *see also Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 468 n.12 (2d Cir. 2006) ("The general rule is that § 1983 claims . . . do not require exhaustion of state remedies."). To the extent Plaintiff realleges that his efforts at vindicating his rights through the filing of a workplace violence complaint and request for reasonable accommodation in the administrative channels described above entitles him to administrative tolling, the Court finds such arguments unavailing for the reasons set forth in the Court's prior Opinion. (*See* Opinion 34–35.)

In response to the Court's dismissal, Plaintiff contends that "it was [his] *Taylor Law* request that sought to vindicate" Plaintiff's privacy claim and not his workplace violence complaint or request for reasonable accommodation. (Pl.'s Opp'n 13.) While the Court agrees that Plaintiff's Taylor Law request was "directly relate[d] to . . . Plaintiff's privacy claims," (*id.* at 13 n.3), the request itself did not aim to vindicate Plaintiff's right to privacy. As evidenced by the letter from Plaintiff's union representative, Plaintiff sought *information* pursuant to the Taylor Law on his behalf, but did not seek a review or adjudication of his claims that Defendants had violated his right to privacy. (*See* SAC Ex. P.) While the requested information might have been useful had Defendants responded, the lack of response was not an extraordinary circumstance that prevented Plaintiff from pursuing the privacy claim he knew had accrued, as

demonstrated by his filing of this Action.  Indeed, had Plaintiff timely filed this Action, he could

have sought the requested information during discovery.

      Plaintiff has thus not plausibly alleged that equitable tolling is appropriate.  *See Guo v.*

*IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. Mar. 26, 2015) ("[T]o benefit from

equitable tolling, a litigant must allege that extraordinary circumstances prevented him from

acting in a timely manner." (internal quotation marks omitted)); *Chao v. Xanadu Boutique, Inc.*,

380 F. Supp. 2d 134, 136 (E.D.N.Y. 2005) (dismissing claim without prejudice where "[the]

plaintiff fail[ed] to plead in the complaint circumstances that justify equitable tolling").

### iii.  Impediments of Training and Commuting

      Finally, with regard to the 50-mile commute Plaintiff faced following his removal as

engineer-in-charge, the Court finds that such conditions simply do not amount to the

"extraordinary circumstance[s]" that prevent parties from timely filing suit and thus warrant

equitable tolling.  *A.Q.C.*, 656 F.3d at 144 (internal quotation marks omitted).  While the Court

does not doubt that Plaintiff faced an inconvenience during his three months of training, the

mental toll of a lengthy commute and demotion is, regrettably, not extraordinary.  Simply put,

Plaintiff has failed to demonstrate how these alleged "extraordinary impediments," (*see* SAC

¶ 89), "prevented [Plaintiff] from timely filing [this Action]," *Walker*, 430 F.3d at 564.

      Because the three-year statute of limitations governing Plaintiff's § 1983 privacy claim

began to run no later than March 2011, Plaintiff's Action filed in July 2014 is untimely.  As

Plaintiff is not entitled to tolling of the statute of limitations, his privacy claim is dismissed.[9]

---

[9] As the Court finds that Plaintiff has failed to state a claim for violation of his
constitutional rights, the Court declines to consider Defendants' arguments that they are entitled
to qualified immunity.  (*See* Defs.' Mem. 18–20.)

### III. Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motion. Because Plaintiff has already amended his Complaint twice—including once in response to a decision on the merits of his claims—but has still failed to state a claim, the Second Amended Complaint is dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and internal quotation marks omitted)).

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 36), and close this case.

SO ORDERED.

DATED:     February /○ , 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

24